### MOODY v. ASHE et al. (No. 8068.) *

(Court of Civil Appeals of Texas. Galveston. Dec. 22, 1921. Rehearing Denied Jan. 12, 1922.)

1. Adverse possession ⬦⟳27—Evidence held to show title until 10 years' statute of limitations.

In trespass to try title, evidence relative to occupancy, cultivation, and the building of fences by plaintiffs and their predecessors in title, *held* to show that plaintiffs had title under the 10 years' statute of limitations.

2. Trespass to try title ⬦⟳12—Grantee in possession of adjoining tracts under same deed may recover against persons without title, although limitation period unexpired.

The possession by grantee of one of two adjoining tracts conveyed by the same deed will entitle him, though he had not held for the period of limitation, to recover the other as one in actual possession against persons showing no title, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 5676.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by J. M. Strong against S. S. Ashe for an injunction, with cross-action against L. B. Moody, Strong's landlord, in trespass to try title. Strong being eliminated and Ashe dying pendente lite, Charles L. Fitch and wife, independent executors of Ashe's will, made themselves parties plaintiff against Moody. Judgment in favor of Fitch and wife, and Moody appeals. Affirmed.

Campbell, Myer & Freeman, of Houston, for appellant.

Andrews, Streetman, Logue & Mobley, of Houston, for appellees.

GRAVES, J. This litigation involves the title and right of possession to 6.06 acres out of 156½-acre lot No. 6 of the subdivision of the east half of the Luke Moore league of land in Harris county, Tex. It arose in this way:

In November, 1912, S. S. Ashe began the erection of a log house on this tract, when J. M. Strong, as a tenant of L. B. Moody, claiming to be in possession of it, along with an adjoining tract, sued out a temporary injunction restraining Ashe from interfering with his possession. Thereupon Ashe, by way of answer and cross-action, disclaimed as to all of the land described in Strong's petition except the 6.06 acres now in controversy, as to which he sued Moody in trespass to try title. Moody replied by a plea of not guilty and a claim of ownership of the land under the five-year statute of limitation. Strong's tenancy term expired, and he became eliminated. S. S. Ashe died pendente lite, and Fitch and wife, who succeeded to his estate, made themselves parties plaintiff against Moody. Trial before the court without a jury resulted in a judgment in favor of Fitch and wife, and Moody prosecutes this writ of error.

The trial court filed these findings of fact:

"I. This suit was originally instituted by J. M. Strong against S. S. Ashe. S. S. Ashe, by answer and cross-action, made L. B. Moody a defendant. S. S. Ashe died during the pendency of the suit, leaving a will, in which Mrs. Sallie Fitch and John B. Ashe were named as independent executors, and as the sole devisees under said will of the property in controversy in this suit. Said will was duly probated in the county court of Harris county, Tex., and thereafter Mrs. Sallie Fitch, joined by her husband, Charles L. Fitch, and John B. Ashe, as executors and individually, suggested the death of said defendant, S. S. Ashe, and made themselves parties to this suit. The original plaintiff, J. M. Strong, during the progress of the trial took a nonsuit. Said John B. Ashe and Mrs. Sallie Fitch, joined by her husband, Charles L. Fitch, are hereinafter referred to as cross-plaintiffs.

"II. The land in controversy is a part of what is known as lot No. 6 of the subdivision of the east half of the Luke Moore league in Harris county, Tex., which is fully described in the judgment in this case. The tract originally sued for contained 22.58 acres of land, but the defendant S. S. Ashe disclaimed as to all of it except 6.06 acres, which disclaimer was adopted by the cross-plaintiffs. Said lot No. 6 of the subdivision of the east half of the Luke Moore league contains 156½ acres, and was deeded by Stephen E. Spence to S. S. Ashe on the 24th day of May, 1880. From said date down to the time of the trial of said cause, said S. S. Ashe, during his lifetime, and the cross-plaintiffs after his death, have claimed all of lot 6 except a tract of 3½ acres out of the northeast corner, known as the George Washington tract, and a tract out of the southeast corner known as the Mike Perkins tract, and

---

⬦⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

236 S.W.—8　　*Writ of error dismissed for want of jurisdiction March 1, 1922.

described in some of the conveyances as containing 7 acres more or less, but in fact containing 16.52 acres.

"Some time prior to 1894, the time not being shown by the evidence, S. S. Ashe took actual possession and fenced all of said lot 6, west of Bray's bayou. During the year 1894, and continuously since that time, said S. S. Ashe, down to the time of his death, and the cross-plaintiffs thereafter, have continuously had actual possession of all of said lot 6 west of Bray's bayou, claiming said entire lot 6 outside of the tracts excepted, as above mentioned, and continuously cultivating portions of said lot 6 west of Bray's bayou.

"I find that in 1866 S. S. Ashe conveyed 156½ acres of land described as lot 6 of the Luke Moore half league to Z. T. Hogan, for the use of T. W. House, to secure the payment of three notes aggregating $9,000.

"That in 1899 Z. T. Hogan, trustee, conveyed said 156½ acres of land to T. W. House, reciting that the said S. S. Ashe had made default in the payment of the notes above referred to.

"On July 16, 1901, T. W. House executed a quitclaim deed to S. S. Ashe to said 156½ acres.

"I find, however, that during the period above referred to, that the said S. S. Ashe claimed said property and exercised acts of ownership, and continuously cultivated portions of said lot 6 west of said Bray's bayou.

"III. On May 17, 1880, S. S. Ashe and others conveyed to Mike Perkins 'seven acres of land, part of what is known as the Perkins farm tract, being part of the Luke Moore league in Harris county, said seven acres being situate upon the upper or southwestern line of the subvision No. 6 of the said Luke Moore league, on the south side, and fronting on Bray's bayou, and running to the southeastern line of said league for quantity.' This is the only deed executed by Ashe conveying any part of the land except the deed to T. W. House, hereinbefore mentioned.

"Mike Perkins conveyed to Halsey, Halsey to Farrell, Farrell to J. M. Cobb and R. N. Little. The land described in these deeds is not in controversy in this suit, and they were admitted in evidence for the purpose of clarifying the description of the land in controversy.

"The deed from J. M. Cobb and R. N. Little to L. B. Moody includes the seven acres referred to above and conveys by field notes described in one tract the land involved in this suit.

"I therefore find that the cross-plaintiffs and the defendant Moody do not claim title under a common source to the land in controversy.

"IV. Said S. S. Ashe, some time during the year 1898, took actual possession of the 6.06 acres of said lot No. 6 east of Bray's bayou lying between the Mike Perkins tract and the George Washington tract, by running a fence from the southeast corner of the George Washington tract to the southeast corner of the Mike Perkins tract. He also built a bridge across the bayou connecting the land in controversy with a portion of lot 6 on the west side of the bayou. The fence above referred to remained on the ground, and was there in the fall of 1905, at the time that a survey of said property was made by one Stimson, a surveyor.

"Between May 1, 1905, and the date of the record of the deed to L. B. Moody, and the date when this suit was instituted in 1912, there were at various times fences erected connecting the northeast corner of the 16.52-acre tract, known as the Perkins tract, and the southeast corner of the George Washington tract. A portion of the time the fence consisted of a fence erected by other parties and joined to by short connecting fences by the defendant Moody. The evidence shows that in 1898 cross-plaintiff Fitch, finding a fence along said east line, destroyed the same by cutting, and that it remained so destroyed for a considerable length of time.

"The evidence also shows that one Milby, with the consent of cross-plaintiff Fitch, removed a considerable portion of this fence, for the purpose of allowing cattle owned by him to have access to the bayou across the land in controversy, and that it remained down a number of months at this time.

"I find that the defendant Moody, on May 5, 1905, was in actual possession of the 16.52 acres, constituting the south end of the tract conveyed to him by Cobb and Little, and continued thereafter in possession of said land, cultivating, using, and enjoying the same, and paying all taxes due on all of the land described in said deed.

"I find that the defendant Moody used said 6.06 acres of land for pasturage purposes. I find, however, that the possession and use actually made of said land by said Moody was not sufficiently notorious to give notice that he was claiming to be the owner of said land.

"V. I find that from the year 1894 down to and including the time of the filing of this suit, and afterwards, S. S. Ashe was in actual possession of all that part of lot 6 lying west of Bray's bayou, cultivating, using, and enjoying the same, and claiming to be the owner thereof, and such possession extended by construction so as to include the land in controversy in this suit."

Then followed a conclusion of law to the effect that Fitch and wife were entitled to recover the 6.06 acres from Moody, and that, in turn, he was entitled to the 16.52 acres they had disclaimed.

The bulk of 156½-acre lot No. 6 so deeded by Spence to Ashe, May 24, 1880, lay on the west side of Bray's bayou; only a narrow strip along its entire east line being on the east side of that stream. This strip was composed of 3½ acres on the north and known as the George Washington tract, 16.52 acres (referred to in the deeds as 7 acres) on the south and known as the Mike Perkins or Farrell tract, and the 6.06 acres lying between these other two which constituted the bone of contention in this suit.

As above indicated plaintiff in error Moody's sole claim to it was one of five years' limitation under his deed from Cobb and Little, while defendants in error assert that they showed title:

(a) By reason of prior possession, both actual and constructive;

(b) By 10 years' possession prior to the purchase by plaintiff in error; and

(c) By proof that plaintiff in error claimed under common source of title.

Plaintiff in error, in contending here that defendants in error showed no title and that he made out a complete title under the five years' statute of limitation, particulary attacks as lacking support in the evidence these findings of the court below: (1) That Moody's possession and use of the land was not sufficiently notorious to give notice that he was claiming to be the owner of it; (2) that from May 24, 1880, until the trial of this cause, Ashe and his successors in title had claimed all of 156½-acre lot No. 6 except the Washington ' 3½ acres in its northeast corner and the Perkins or Farrell 16.52 acres in its southeast corner; (3) that during the period covered by the Ashe and House transaction, that is, from 1886 until July 17, 1901, Ashe claimed and exercised acts of ownership over the property he had conveyed to Hogan as trustee, continuously cultivating portions of it west of Bray's bayou; (4) that in 1898 Ashe took actual possession of the 6.06 acres in suit by running a fence from the southeast corner of the Washington to the southeast corner of the Perkins tract—which fence remained on the ground and was there at the time Stimson surveyed the property in the fall of 1905 —and built a bridge across the bayou connecting the land in controversy with a portion of lot 6 on the west side of the stream; (5) that "from the year 1894 down to and including the time of the filing of this suit, and afterwards, S. S. Ashe was in actual possession of all that part of lot 6 lying west of Bray's bayou, cultivating, using, and enjoying the same, and claiming to be the owner thereof, and such possession extended by construction so as to include the land in controversy in this suit."

Under further assignments he insists that, in response to his motions, there should have been certain specific additional findings made touching his use of the land and his opponents' title; obviously, however, if the evidence was sufficient to sustain the first and fifth findings just enumerated, since they determined that plaintiff in error failed to substantiate his sole claim of title and that his opponents made out a complete one under the statute of ten years' limitation, inquiries either as to whether the evidence supported others of those made, or called for the making of additional ones not stated, have now become unimportant.

After a careful study of the statement of facts we conclude that these two findings were not without sufficient support.

It is true there was a conflict in the testimony as to when, by whom, and during what periods of time, fences were put and maintained along the east line of the 6.06 acres, the material features of which the quoted findings show the court to have resolved in favor of defendants in error; but it is undisputed that there was no actual possession by inclosure of this tract by Cobb and Little at the time Moody bought from them in April, 1904, for he himself testified that just before buying he went upon the property with Mr. Cobb, going first to its southeast corner, thence west to the bayou, thence along the meanders of the bayou to the George Washington tract immediately north of the 6.06 acres, thence across the south line of the Washington tract to the east line of the land as conveyed to him, thence down that east line to the place of beginning, concluding on the point as follows:

"As we walked along down the east line of that property, I saw no sign of there ever having been a fence there. I put no fence there during the time that Lucius Patterson was there. The balance of that year I put no fence there. The following year I had a fence built from the northeast corner of the inclosure as it had existed connecting with the George Washington fence; that was in 1905."

His further testimony that the balance or south part of the Cobb and Little purchase was at all times continuously under fence, occupancy, and cultivation is immaterial, since it is not here in controversy.

The character and continuity of his subsequent possession and use of this particular tract was also a matter about which the testimony was conflicting, and this too having been in the manner we have found resolved against him below, the result cannot be disturbed here.

As upholding the opposing claim—reflected in the quoted fifth finding—that from 1894 on down Ashe was in actual possession of all of lot 6 lying west of the bayou cultivating, using, claiming it, and that such possession extended by construction so as to include this small tract on the east side of the stream, some of the outstanding features of the proof made were these:

No question was raised as to Ashe's actual possession, use, cultivation, and enjoyment of, or claim to, all of lot No. 6 west of the bayou during the whole of the time thus stated; the positive testimony to that effect being uncontroverted. His deed from Spence covered as well the 6.06 acres on the east side of the bayou, and no conveyance of it as a particular tract out of him was ever executed. While it was embraced in the deed to T. W. House referred to in the trial court's II finding of fact, that did not, as is further therein determined, break or interfere with Ashe's acts of ownership over any portion of the 156½ acres. The witness Fitch testified that he became acquainted with this 6.06-acre tract and the situation out there in 1894, from that time on being on the property under Ashe, familiar with it, and having no knowledge prior to 1912 that Mr. Moody was claiming it; that on so

entering in 1894 he, established a hog ranch on the land on the west side of the bayou, there being then old improvements thereon with encircling fences; that in 1898 he saw the bridge built across the bayou which Capt. Ashe put there to connect this 6 acres with the occupied portion of the land on the west side; that in 1908 he found a brand new 4-wire fence constructed along the east line of this 6.06 acres, which he cut completely down from the Washington tract on the north to the Farrell tract on the south and which remained down for two or three years anyhow before it was rebuilt; that after it was rebuilt he permitted Milby to cut it and use the 6 acres in allowing his cattle to get to the bayou.

The witness Farrell testified that for many years prior to Moody's purchase of it he lived on the Perkins or Farrell tract, that is, the south or inclosed portion of the tract conveyed by Cobb and Little to Moody; that about 1898 Capt. Ashe had a surveyor out there, inclosed the 6.06 acres by running a fence from Farrell's corner to Washington's corner, built a bridge across the bayou connecting it with his place on the west side, and allowed the Farrells to use this east side tract as a range for their cattle and the bridge was an outlet through his place to town, via the Telephone Road. On direct examination he further said this fence Capt. Ashe put up remained there about 10 or 12 years, but on cross, in undertaking to give dates, he became uncertain and confused, making statements which, if taken in lieu of his first and more positive estimate, would place the time during which the fence stayed there at only about 2 years. Moreover, plaintiff in error, about the time of the deed to him in 1904, had the land in controversy surveyed by A. E. Stimson, and the field notes and plat Stimson made of it show a fence along the east line of this 6.06 acres in October of 1904.

[1] Without attempting a further résumé of the evidence, we think it clear that defendants in error showed title under the ten years' statute of limitation, as follows from the conclusion already stated that the trial court's fifth finding of fact had sufficient support in the testimony. In this connection we pretermit any consideration or discussion of the instruments evidencing the T. W. House transaction, and of what their effect might be on claims of title in other ways, for the reason that as affects the one through ten years' limitation, by the undisputed proof, as well as the stated finding of the court below, no change was thereby wrought in the character of Ashe's possession of the tracts on either side of the bayou; he was before holding both under a deed embracing and describing them as one, and his actual possession of all that portion lying west of the bayou continued unabated and unchanged notwithstanding these matters; the mere execution of such instruments, therefore, neither destroyed his possession nor the claim of title arising out of it.

[2] Even were it conceded, however, that Ashe parted with his title through the trustee's sale to House, still it came back to him by the deed from House in 1901, four years before the inception of plaintiff in error's adverse claim, during which period Ashe undisputedly had actual possession of all lot 6 west of the bayou, holding it under the same conveyance and claim of title as that under which he claimed the 6.06 acres. The resulting situation therefore would come within the rule as thus stated in the syllabus, which correctly reflects the holding of our Supreme Court in Allen v. Boggess, 94 Tex. 83, 58 S. W. 833:

"The possession by a grantee of one of two adjoining tracts conveyed by the same deed will entitle him, though he has not held for the period of limitation, to recover the other * * * as one in actual possession, against persons showing no title."

See, also, as further authority that actual possession of part of a tract of land under an instrument defining its boundaries is possession of the whole, Vernon's Sayles' Statutes, art. 5676; Bowles v. Brice, 66 Tex. 730, 2 S. W. 729; Wier Lumber Co. v. Conn, 156 S. W. 277.

Further discussion is deemed unnecessary. From the conclusions stated it is apparent that, in our opinion, the trial court's judgment should be affirmed; it has accordingly been so ordered.

Affirmed.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes